**ELDER FIRM, APC**
Jonathan Lee Borsuk, *Of Counsel* (California State Bar No. 343202)
*jborsuk@elderfirm.com*
Keith F. Elder (California State Bar No. 175365)
*kelder@elderfirm.com*
21550 Oxnard Street, Suite 780
Woodland Hills, California 91367
Telephone: (818) 344-9001
Facsimile: (818) 344-3205

Attorneys for Plaintiffs ARTHUR R. FLEISCHMANN, W2 LOGISTICS LLC, and CA PRODUCTIONS LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

ARTHUR R. FLEISCHMANN, an individual; W2 LOGISTICS LLC, a California limited liability company; and CA PRODUCTIONS LLC, a California limited liability company,

Plaintiffs,

v.

APOGEE 21 HOLDINGS, INC., a Delaware corporation; MARK NEWMAN, an individual; ROB KOCH, an individual; GARY HERICK, an individual; and SAMUEL T. DAMGOODE WHISKEY COMPANY, INC., a Wyoming corporation,

Defendants.

Case No. ________________________

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Arthur R. Fleischmann ("Fleischmann"), W2 Logistics LLC ("W2 Logistics"), and CA Productions LLC ("CA Productions" and, together with Fleischmann and W2 Logistics, "Plaintiffs"), for their Complaint against Defendants Apogee 21 Holdings, Inc. ("Apogee" or the "Company"), Mark Newman ("Newman"), Rob Koch ("Koch"), and Gary Herick ("Herick") (collectively, "Defendants"), and against Samuel T. Damgoode Whiskey Company, Inc. ("Damgoode") on the Thirteenth Claim for Relief only, allege as follows, upon personal knowledge as to Plaintiffs' own acts and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This action arises from a course of conduct through which Apogee and its officers and director progressively induced Fleischmann—first a California logistics vendor to Apogee, then an investor, then a noteholder, then a secured lender, and finally a source of emergency acquisition funding—to part with more than $740,000 in cash for securities, and to extend substantial additional credit and services, in reliance on material misrepresentations and omissions concerning the collateral promised to secure Apogee's preferred stock and concerning Apogee's status and future as a public reporting company.

2. Fleischmann accepted the disclosed risks of an early-stage, restricted, and speculative investment. He did not accept—and neither the securities laws nor the common law permit—being induced to part with money, services, and credit through false descriptions of existing facts, through material omissions, and through the sale of securities expressly denominated "Secured" that were never in fact secured by the collateral structure the governing instrument required.

3. Viewed as a whole, Plaintiffs supplied far more than investment capital. They provided warehouse and logistics services, contract manufacturing, acquired Apogee debt, extended secured commercial credit, and funded an acquisition escrow. Apogee's obligations matured and went unpaid while substantial Apogee product

remained in Plaintiffs' California warehouse and while valuable acquisition activity was being conducted through a separate nominee entity. Plaintiffs bring this action to establish liability, obtain the disclosure and an accounting to which they are entitled, preserve and recover collateral, and recover their losses.

## PARTIES

**Plaintiffs**

4. Plaintiff Arthur R. Fleischmann is a natural person who resides in Orange County, California, and who operates shipping and logistics businesses from 15928 Commerce Way, Cerritos, California 90703. Fleischmann is the subscriber and purchaser of record on each of the Series B Preferred cash subscriptions described below—each of which names him individually, with his personal identifying information—and is the lender under the Commercial Financing Agreement described below. The subscription and related funds located to date were advanced from a business checking account in the name of Fleischmann, Inc., a holding entity through which Fleischmann conducts certain investment activity, as loans from Fleischmann, Inc. to Fleischmann personally. Fleischmann is accordingly the purchaser of record and the real party in interest and brings the securities claims individually; Fleischmann, Inc. is the source of funds and is not a necessary party.

5. Plaintiff W2 Logistics LLC is a California limited liability company owned by Fleischmann, with its principal place of business at 15928 Commerce Way, Cerritos, California 90703. W2 Logistics provided warehousing, storage, freight, and handling services to Apogee and its affiliated entities and is an unpaid trade creditor of Apogee. W2 Logistics asserts a warehouse lien against Apogee goods presently in its possession.

6. Plaintiff CA Productions LLC is a California limited liability company owned by Fleischmann. CA Productions provided storage, freight handling, contract manufacturing, and related services to Apogee and is an unpaid trade creditor of Apogee. CA Productions asserts a warehouse lien against Apogee goods presently in

its possession.

**Defendants**

7. Defendant Apogee 21 Holdings, Inc. is a corporation organized under the laws of the State of Delaware, with its principal office, according to the executed Commercial Financing Agreement, at 4578 Carriage Lane, Las Vegas, Nevada 89119. Apogee is identified in records of the U.S. Securities and Exchange Commission (the "SEC" or "Commission") under Central Index Key ("CIK") No. 0001993951. Apogee's common stock is quoted on OTC Markets under the symbol "APHD" (CUSIP No. 03769Q107), though Apogee is not a current Exchange Act reporting company, as alleged below. Apogee describes itself as a beverage alcohol brand consolidation company. Apogee is the issuer of the securities sold to Fleischmann and the obligor on the credit and trade obligations at issue.

8. Defendant Mark Newman is a natural person who, on information and belief, resides in Orange County, California, and is the Chief Executive Officer of Apogee. Newman accepted subscription documents, directly solicited Fleischmann's investments in California, authored the investor communications described below, was Fleischmann's principal counterparty throughout the relationship, and acknowledged Apogee's debt in writing in July 2026. Newman purposefully directed the solicitations and transactions at issue into California. Newman is a controlling person of Apogee within the meaning of Section 20(a) ("§ 20(a)") of the Securities Exchange Act of 1934 (the "Exchange Act") and California Corporations Code § 25504 ("§ 25504").

9. Defendant Rob Koch is a natural person who, on information and belief, resides in Marina del Rey, California, and is the Chief Operating Officer of Apogee. Koch was present during the oral solicitations of Fleischmann's investments described below, executed the Commercial Financing Agreement on behalf of Apogee, proposed the conversion of unpaid trade debt into Apogee stock, originated the later financing request, and, in June 2026, declined to confirm Fleischmann's characterization of the Kentucky escrow advance. Koch is a controlling person of Apogee within the meaning

of § 20(a) and § 25504.

10. Defendant Gary Herick is a natural person who, on information and belief, resides in Las Vegas, Nevada, in a residence provided by Apogee, and is an officer of Apogee. Herick signed Apogee's subscription documents as its "Chief Financial Officer" through 2024, and Apogee's investor-relations materials identify him as its Vice President or Executive Vice President of Business Development. Herick created and transmitted the subscription documents for the October 2023, January 2024, and May 2024 purchases described below, authored the March 21, 2024 solicitation described below, and is identified as the contact person on Apogee's own wire instructions. Herick purposefully directed the solicitations and transactions at issue into California. Herick is a controlling person of Apogee within the meaning of § 20(a) and § 25504.

11. Defendant Samuel T. Damgoode Whiskey Company, Inc. is a corporation organized under the laws of the State of Wyoming. Apogee's own April 14, 2026 acquisition presentation, furnished to Fleischmann, describes Damgoode as "a wholly owned subsidiary of Apogee 21 Holdings, Inc."; the asset purchase agreement for the Luca Mariano acquisition names the purchaser as Apogee "or its nominee" Damgoode; and Newman executed that agreement as Damgoode's Chief Executive Officer. On information and belief, Damgoode is a nominee, subsidiary, and transferee of Apogee, formed and used to take title to assets and opportunities that Apogee's consideration and activity procured, and Apogee and Damgoode are under common control such that Damgoode operates as Apogee's instrumentality; Plaintiffs plead the alter ego relationship on information and belief and will seek leave to amend to allege the supporting facts—including common ownership, common officers, capitalization, formation timing, funding, shared personnel, and disregard of corporate formalities—as they are ascertained. Damgoode is named solely on the Thirteenth Claim for Relief, on which Plaintiffs proceed against it as a transferee under the Uniform Voidable Transactions Act without regard to veil-piercing; and to the extent the alter ego

relationship is established, Apogee's contacts with California are imputed to Damgoode for purposes of personal jurisdiction.

**Agency, Control, and Concerted Action**

12. At all relevant times, Newman, Koch, and Herick were officers or a director of Apogee acting within the course and scope of their offices and with the actual or apparent authority of Apogee, and Apogee acted through them. Each of Newman, Koch, and Herick possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of Apogee and had the power to control the specific transactions and communications in which he participated, as alleged below. The particular statements, omissions, and acts of each individual Defendant are identified below and are not pleaded on a group basis.

## JURISDICTION AND VENUE

13. This Court has federal-question subject-matter jurisdiction under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, over the claim arising under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Section 27 confers exclusive jurisdiction of that claim on the federal courts.

14. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining claims, which arise under California statutory and common law and are so related to the federal claim that they form part of the same case or controversy—namely, the integrated course of dealing between Plaintiffs and Apogee arising from Fleischmann's investments in and extensions of credit to Apogee and Plaintiffs' provision of services to Apogee.

15. This Court has personal jurisdiction over each Defendant. Newman, Koch, and Herick each purposefully directed the solicitations, communications, subscription documents, financing, and securities transactions at issue into California, where Fleischmann received them and acted on them, and Plaintiffs' claims arise out of that California-directed conduct; on information and belief, Koch also resides in

California and is additionally subject to this Court's general jurisdiction. Apogee transacted business and directed its offering and communications into California. Apogee's California contacts are imputed to Damgoode as its alter ego. Independently, on information and belief, Damgoode is subject to personal jurisdiction in California because Apogee, acting through Newman as Damgoode's chief executive officer, deliberately directed into California the solicitation of Fleischmann's funding of Damgoode's acquisition—including by furnishing Fleischmann the April 14, 2026 Project Damgoode acquisition presentation, requesting his $250,000, transmitting escrow instructions to him, and promising him equity in Damgoode—and because Damgoode knowingly received and benefitted from Fleischmann's California-sourced funds; Plaintiffs' Thirteenth Claim for Relief arises out of that California-directed conduct.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act because a substantial part of the events giving rise to the claims occurred in this District, because Apogee transacted business and directed solicitations into this District, and because the goods and collateral at issue are located in this District. This action is properly assigned to the Western Division because a substantial part of the events and omissions giving rise to the claims occurred in Los Angeles County, including at Plaintiffs' facility in Cerritos.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### The Parties' Vendor Relationship and Its Evolution

17. Beginning in 2023, W2 Logistics and CA Productions provided warehousing, storage, freight, handling, and contract-manufacturing services to Apogee and its affiliated entities at 15928 Commerce Way, Cerritos, California, for hire and in the ordinary course of their business. Fleischmann's investment relationship with Apogee developed out of that commercial vendor relationship. Fleischmann is not a beverage alcohol operator and had no background in the wine and spirits industry; his business is shipping and logistics.

**Apogee's Public-Company Presentation and Its Actual SEC Filing History**

18. Apogee presented itself to Fleischmann as a public-company platform assembling craft spirits brands and, over the course of the relationship, as the successor of a former OTC-quoted company and as moving toward audited financial statements, current SEC reporting, and public trading. The specific dated statements to that effect are identified below; several of the strongest such statements were made after Fleischmann's three cash purchases and are alleged as to the later transactions, scienter, and concealment rather than as the basis of reliance for the earlier purchases.

19. Apogee is identified in SEC records under CIK No. 0001993951. On information and belief, the first and only document Apogee has filed with the Commission under that identifier is a Form D notice of exempt offering filed on or about September 26, 2023, reporting a claimed offering under Rule 506(b) with a $5,000,000 target, of which $42,310 had then been sold to three investors. On information and belief, Apogee has not filed a Form 10-K, Form 10-Q, Form 8-K, registration statement, proxy statement, or any report under Section 16 of the Exchange Act, is not a current Exchange Act reporting company, and never amended the Form D notwithstanding Fleischmann's subsequent cash purchases exceeding $740,000.

20. Apogee presented itself to Fleischmann as the successor to the former 30DC public shell. Publicly available OTC Markets disclosures describe a corporate succession under which 30DC, Inc. redomiciled from Maryland to Delaware and changed its name to 30DC Merger Co. in or about February 2022, and thereafter, in or about May 2022, changed its name to Apogee 21 Holdings, Inc. in a holding-company reorganization, with the trading symbol changing from TDCH to APHD. That OTC-quoted lineage, however, did not make Apogee a current Exchange Act reporting company. 30DC, Inc. (CIK No. 0001118974) ceased Exchange Act reporting by filing a Form 15-12G on or about September 1, 2017, and Plaintiffs have identified no subsequent periodic Exchange Act reporting by Apogee (CIK No. 0001993951), whose only Commission filing is the September 2023 Form D. Whatever the validity

of Apogee's OTC-market corporate succession, it did not substantiate Apogee's later representations, identified below, concerning current SEC-reporting status, progress toward audited financial statements, statements that financials were complete, and imminent Commission filings and trading milestones. Theodore A. Greenberg is reported as the Chief Financial Officer and Secretary of both 30DC and Apogee.

21. On information and belief, Apogee's common stock quoted under the symbol APHD carries an OTC Markets "Caveat Emptor" designation and trades, if at all, only on a severely restricted basis, which as a practical matter severely impairs or effectively eliminates ordinary broker-facilitated liquidity and any market-based exit.

22. For the avoidance of doubt, Plaintiffs do not allege that a Form D constitutes registration, or that the absence of a registration statement alone renders any sale unlawful; Apogee claimed an exemption under Rule 506(b). Plaintiffs allege that Apogee represented a current SEC-reporting status and progress toward audited financial reporting, Commission filings, and public trading milestones that its actual filing history did not substantiate, and that the true state of Apogee's reporting status and progress toward those milestones was concealed and omitted.

**The Series B "Secured Stock" Offering and the Promised Security Structure**

23. The security Apogee offered and sold to Fleischmann is titled, on its face, "Series B Convertible Preferred 6% Cumulative Dividend Secured Stock."

24. Section 11 of the Certificate of Designation for the Series B Preferred provides that Apogee "shall execute a Pledge and Security Agreement and Mortgage to a Trustee, for the benefit of the Series B Preferred Shareholders to secure the Series B Preferred Stock, in liquidation, on all assets, intangibles, or property acquired upon conversion or redemption of all the Series B Preferred Stock." Section 11 thereby imposed on Apogee an express, affirmative obligation to execute the pledge, security agreement, mortgage, and trustee appointment necessary to secure the Series B Preferred. The offering term sheet likewise marketed the offering as secured.

25. On information and belief, and after investigation of the records presently

available to Plaintiffs, Apogee never executed any such Pledge and Security Agreement, never executed any such mortgage, never appointed any such trustee, never obtained board approval of any such security structure, and never created, filed, or recorded any financing statement or other instrument perfecting any security interest for the benefit of the Series B Preferred holders. No such instrument appears in the offering materials or transaction records furnished to Fleischmann, and Apogee has never performed its express obligation under Section 11.

26. The security structure required by Section 11 was material. A reasonable investor would attach importance to whether a security expressly denominated "Secured" and contractually required to be secured was in fact secured by the promised collateral. The failure to create that structure was not disclosed to Fleischmann and, because the existence or nonexistence of the pledge, mortgage, and trustee was reflected only in records within Apogee's exclusive possession and control, was not reasonably discoverable by him.

27. The offering documents contain material internal inconsistencies that bear on whether the Series B shares were validly authorized and whether Fleischmann received the security described, and that require verification against Apogee's corporate records: the term sheet described an offering of up to 25,000,000 Series B shares, while the Certificate of Designation designates 20,000,000; certain subscription forms carried promissory-note conversion language inconsistent with a cash purchase; and versions of the executed Certificate bear irregular execution dates. Plaintiffs allege these irregularities on information and belief and reserve their full development for discovery.

**<u>The Risk Disclosures and the Facts Not Disclosed</u>**

28. The offering materials disclosed that the Series B Preferred was not publicly traded, that no market existed and none was assured to develop, that Apogee had no profitable operating history, and that the shares were unregistered, restricted, highly speculative, illiquid, and might have to be held indefinitely, and that a

subscriber could bear a complete loss. The subscription documents further contained Fleischmann's signed acknowledgment that "[t]he Company has NOT furnished me with any financial statements as such have not, except 2021, been brought up to date, and I cannot rely on any financial information in making this decision." Plaintiffs' claims do not rest on the disclosed risks, and do not rest on any contention that Fleischmann believed audited or current financial statements existed. Fleischmann was aware that current financial statements had not been furnished; in connection with his final purchase he requested them and was told he would receive them, and never did. Plaintiffs' claims rest on a fact that the disclosures did not address and that the acknowledgment did not reach—the promised but nonexistent Section 11 security structure by which the "Secured Stock" was represented to be secured—and, as to the later transactions, on the affirmative misrepresentations concerning Apogee's reporting status, progress toward audited financial reporting, Commission filings, and public-trading milestones identified below.

**<u>The Cash Subscriptions</u>**

29. The August 2023 Purchase. On or about August 15 and 16, 2023, Fleischmann executed subscription documents to purchase 32,355 shares of Series B Preferred at $0.50 per share for $16,177.50 in cash; the subscription was accepted by Newman on August 17, 2023. The offering materials Fleischmann received before this purchase—including the term sheet, the Certificate of Designation, and the subscription agreement—described the security as "Secured Stock" and represented the Section 11 security structure, while omitting that the Section 11 pledge, mortgage, and trustee structure had not been and would not be created. Fleischmann relied on the representation that the security was secured, and on Apogee's undisclosed failure to create the promised security structure, in making the purchase.

30. The October 25, 2023 Purchase. On or about October 25, 2023, Fleischmann purchased 700,000 shares of Series B Preferred at $0.50 per share for $350,000 in cash. The subscription for this purchase was created and transmitted by

Herick and was executed and accepted on or about October 25, 2023, and funded by wire on October 30, 2023. The "Secured Stock" representation continued in effect and uncorrected as of this date, as did Apogee's undisclosed failure to create the Section 11 security structure. This is the largest single cash purchase. Fleischmann relied on that representation and that omission in making the purchase.

31. The January 2024 Purchase. On or about January 19, 2024, Fleischmann purchased 500,000 shares of Series B Preferred at $0.50 per share for $250,000 in cash. Herick created and transmitted the subscription at 4:10 p.m. on January 19, 2024, and Newman accepted it on January 20, 2024. The "Secured Stock" representation continued in effect and uncorrected as of this date, as did Apogee's undisclosed failure to create the Section 11 security structure. Fleischmann relied on that representation and that omission in making the purchase.

32. The May 2024 Purchase. On or about May 15, 2024, Fleischmann purchased 250,000 shares of Series B Preferred for $125,000 in cash, wired directly to Apogee. Herick created and transmitted this subscription at 8:49 a.m. Pacific time on May 15, 2024; Fleischmann signed it at 9:11 a.m.; and Newman countersigned it at 9:28 a.m. This purchase was the closest in time to the adverse disclosures described below and followed Newman's March 1, 2024 representations that Apogee's financials were "currently being prepared for audit" and its stock was anticipated to commence trading by late March. Fleischmann relied on the continuing "Secured Stock" representation, on Apogee's undisclosed failure to create the Section 11 security structure, and on Newman's March 1, 2024 public-company and trading representations, in making this purchase.

33. The four cash subscriptions total $741,177.50—$616,177.50 across the first three and $125,000 for the fourth. The representations and omissions on which Fleischmann relied in making the first three purchases are those contained in and arising from the offering documents themselves; as to the May 2024 purchase, Fleischmann additionally relied on Newman's March 1, 2024 public-company and

trading representations. Herick created or transmitted the October 2023, January 2024, and May 2024 subscriptions, and Newman accepted or countersigned all four.

**Subsequent Securities Transactions**

34. The May 2024 Settlement Instrument. Herick created, and Apogee and Fleischmann executed, two counterparts of a "Settlement Agreement and Subscription Representations," governed by Colorado law, that purported to convert a $500,000 promissory note of the Company into 300,000 shares of Series B Preferred; Newman signed both counterparts on May 20, 2024, and Fleischmann signed one on May 20 and the duplicate on May 27, 2024. By its terms the instrument did not become binding on the Company unless and until the Company's financial statements were completed (Section 16), and completion was to be effectuated only upon book-entry registration of the shares with the transfer agent (Section 17); the instrument is internally inconsistent as to the class of shares, conditioning completion on registration of "the common shares of the Company issued in Consideration" while the acceptance block promised to issue "300,000 Series B Preferred Shares within 5 business days in Book Entry." Fleischmann never received the 300,000 shares, never received any certificate or transfer-agent confirmation of them, and those shares do not appear in any statement of his holdings. On information and belief the shares were never issued, the Company's financial statements were never completed, and the conditions to the instrument's effectiveness were never satisfied, and both parties thereafter continued to treat the underlying indebtedness as outstanding. Because the issuance of the 300,000 shares is unconfirmed, Plaintiffs do not plead that issuance as a completed securities transaction. The instrument recites a purported "$500,000 Promissory Note of the Company dated May 16, 2024." That May 16, 2024 note is distinct on its face from the Replacement Promissory Note originally issued to the Michael A. Littman, Atty. Defined Benefit Plan and later assigned to Fleischmann, which is dated May 15, 2024 and is the subject of Fleischmann's separate action in the District of Colorado. Plaintiffs allege no satisfaction or release of the Littman Note by reason of the

settlement instrument, and reserve all rights concerning the identity, validity, and effect of the separate May 16, 2024 note and the settlement instrument.

35. The 2025 Services Issuances. On or about April 8, 2025, Apogee issued Fleischmann 20,515 shares of common stock valued at $10,257.52, and on or about June 6, 2025, 23,794 shares of common stock valued at $11,897.02, each denominated as a subscription for services and each reciting "Storage" as the nature of the business. Each instrument names Fleischmann individually. Each dollar amount divides by the $0.50 per-share price with a cents-level remainder, reflecting that the amounts were derived from unpaid storage-invoice totals, and the April 2025 subscription was executed in the same electronic envelope as the Commercial Financing Agreement. Each issuance was a sale of a security for consideration. These issuances predate every invoice underlying the trade-debt claims pleaded below and are not included in those claims, so that Plaintiffs seek no double recovery. Each 2025 subscription also contained Fleischmann's acknowledgment that he had received the corporate documents he requested and the opportunity to ask questions and obtain additional information; Plaintiffs accordingly plead these issuances as the basis of the qualification claim under the Fifth Claim for Relief and not as a basis for the fraud claims.

**Post-Purchase Statements, Concealment, and Lulling**

36. On or about February 21, 2024, in response to a statement of account for unpaid storage invoices, Koch proposed to Fleischmann: "Let's convert this to stock."

37. On or about March 1, 2024, Newman circulated an investor letter to Fleischmann representing, among other things, that a brand had "successfully merged into our public entity," describing the division as "a public company (Stock Symbol APHD)," stating that Apogee's financials were "currently being prepared for audit and will soon be uploaded to the OTC Markets," that Apogee's stock was anticipated "to commence trading by late March," and that a brand represented approximately $4 million in revenue. These representations conveyed that Apogee had progressed

toward audited financial reporting and public trading and was on the cusp of both. On information and belief, no audited financial statements followed, no SEC periodic reporting followed, and the anticipated trading did not commence as represented; Apogee's OTC quotation under the symbol APHD did not make it a current Exchange Act reporting company.

38. On or about March 21, 2024, Herick sent Fleischmann a communication describing a barrel-inventory position, stating a barrel inventory value of $31,269,920, predicting that the stock would "trade at a significantly higher market cap," and soliciting further investment at $0.50 per share. On information and belief, the stated inventory figure was materially overstated or unsupported.

39. On or about August 29, 2024, Herick circulated an investor update stating that Apogee had retained audit, tax, and securities law firms to be "reported in our upcoming SEC filings," that its financials were "now complete and will be filed shortly with the SEC," identifying Issuer Direct as its transfer agent, and announcing a planned change of domicile to Wyoming for "stockholder anonymity." The representation that the financials were "now complete" and would be "filed shortly with the SEC" was a representation concerning then-existing facts and imminent filing status and was false or materially misleading: on information and belief, Apogee did not engage an auditor (Weinberg & Company) until January 2026, that engagement was not signed until April 2026, no audited financial statements were thereafter completed, and no periodic report or registration statement was filed with the Commission.

40. On or about March 28, 2025, Koch sent Fleischmann a financing-origination communication leading to the Commercial Financing Agreement described below.

41. The March 2024 and August 2024 statements postdate the three cash subscriptions and are not alleged as the representations on which Fleischmann relied in making those purchases. They are alleged (i) as representations on which Fleischmann relied in entering into the May 2024 settlement instrument and in

connection with the subsequent transactions described herein; (ii) as evidence of Defendants' knowledge and intent; and (iii) as affirmative acts of concealment and lulling that prevented Fleischmann from discovering the facts constituting the violations alleged herein.

**The Commercial Financing Agreement**

42. On or about April 8, 2025, Fleischmann and Apogee entered into a Commercial Financing Agreement (the "CFA" or "Commercial Financing Agreement"), which Koch executed on behalf of Apogee on April 9, 2025. The CFA established a secured revolving credit facility in favor of Fleischmann with a $500,000 limit, bearing interest at 3.0 percent per month compounded monthly on the daily drawn balance, for a one-year term renewable only by mutual written agreement, with advances restricted to the production of spirits. Section 7 of the CFA grants Fleischmann a security interest in Apogee's spirits, production inventory, and related receivables. Section 8(d) makes a material misrepresentation an Event of Default. The CFA is governed by California law. The CFA is a commercial financing agreement and is not a security; it is the subject of Plaintiffs' contract claims, not their securities claims.

43. On information and belief, as of July 8, 2026, the outstanding balance treated as owing under the CFA, including the May 4, 2026 advance described below, was $998,075.47, with continuing accrual thereafter. Plaintiffs will confirm the precise balance and its components and will ensure that no component of the aggregate relief sought is duplicated across claims.

44. A First Amendment to the CFA that would have added specific UCC filing authorization and refined the collateral descriptions was drafted but never executed. Attachment of Fleischmann's security interest may nonetheless exist; perfection and priority are the subject of ongoing investigation.

**The May 4, 2026 Kentucky Escrow Advance**

45. In late April and early May 2026, Apogee sought an additional $500,000

from Fleischmann in connection with Apogee's pending acquisition, through a 11 U.S.C. § 363 bankruptcy sale, of the assets of the Luca Mariano Distillery in the Eastern District of Michigan. On the morning of April 30, 2026, Koch met Fleischmann in person at his Cerritos, California facility and represented, among other things, that the deposit would sit in escrow for approximately 21 days until approval, that Apogee would then have eight weeks to fund the full transaction through two engaged firms, and that both of Fleischmann's $500,000 loans would be repaid in full—approximately $1,311,645.95—on closing. On May 2, 2026, Newman sent Fleischmann wire instructions under the cover line, "Here you Art. Thank you very much for supporting this very strategic deal." Before funding, Fleischmann sought protective documentation, including a Deposit Funding and Reimbursement Agreement; none was executed. Understanding, based on Apogee's representations, that both contemplated $250,000 payments would be repaid in full with interest, and believing that Apogee could not acquire the distillery without the deposit, on May 4, 2026 Fleischmann wired a single $250,000 tranche to the Synovus debtor-in-possession escrow.

46. In a confirming email on May 4, 2026, and again on May 29, 2026, Fleischmann memorialized his understanding that the $250,000 was a senior secured advance treated as an additional draw under the CFA, on the same collateral and priority and not an equity contribution, that the deposit would return to him directly if Apogee were outbid, that he would receive a proportionate share of the $250,000 break-up fee and equity in Damgoode, and that he would be repaid with interest by September 30, 2026. On June 3, 2026, Koch replied that Apogee had to discuss the matter internally and with its attorneys before responding, and Apogee never confirmed Fleischmann's understanding. Plaintiffs allege that the $250,000 advance is repayable under the CFA and, in the alternative, as a reimbursement or restitution obligation.

**<u>The Kentucky Acquisition and the Damgoode Nominee Structure</u>**

47. Apogee pursued the acquisition of the Luca Mariano Distillery assets through Damgoode. Apogee's own April 14, 2026 acquisition presentation, furnished to Fleischmann, states that the acquisition "will be completed by the Samuel Damgoode Whiskey Company, Inc.[,] [a] wholly owned subsidiary of Apogee 21 Holdings, Inc."; the asset purchase agreement names the purchaser as Apogee "or its nominee" Damgoode, a Wyoming corporation; and Newman executed it as Damgoode's Chief Executive Officer. On information and belief, in connection with that acquisition Apogee made one or more transfers to or for the benefit of Damgoode or incurred obligations, and structured the acquisition so that title to the resulting assets would be taken, or was to be taken upon closing, in Damgoode's name rather than in Apogee's, and Apogee furnished or arranged the consideration, deposits, and activity that procured that acquisition opportunity—including the benefit of Fleischmann's $250,000 escrow advance. No explanation for the nominee structure was given to Fleischmann, who understood it to threaten the transfer of Apogee's assets, brands, and business into Damgoode, leaving his Apogee equity in a stripped shell. Plaintiffs reserve for discovery and amendment the identification of the specific transfers, consideration, and closing terms, including the confirmation and sale-approval proceedings in the Michigan bankruptcy case, the confirmation hearing in which was continued to July 21, 2026.

**The Warehouse Goods and Trade Debt**

48. Approximately 100 pallets of Apogee finished beverage alcohol product, together with bottles, closures, labels, packaging, and other production and packaging materials, remain in Plaintiffs' warehouse in Cerritos, California. W2 Logistics and CA Productions assert a warehouse lien under California Commercial Code § 7209 against the Apogee goods in their possession, and each retains possession of those goods.

49. Apogee is indebted to W2 Logistics in the amount of $46,235.48 for unpaid invoices for storage, freight, and related services rendered from December 9,

2025 through June 16, 2026, and to CA Productions in the amount of $50,486.39 for unpaid invoices for storage, contract manufacturing, and related services rendered from June 2025 through July 2026. All such invoices are past due.

**Nonpayment, Demand, and Acknowledgment of Debt**

50. On or about July 8, 2026, Newman acknowledged Apogee's debt to Fleischmann in writing, stating that Apogee was "waiting on the final payments from RNDC so we can get you paid." On or about July 17, 2026, Plaintiffs' counsel delivered a written demand for payment of the aggregate obligations owed to Plaintiffs. Apogee did not substantively respond to the demand.

**Discovery of the Wrongdoing**

51. Fleischmann did not discover, and in the exercise of reasonable diligence could not have discovered, the facts constituting the violations alleged herein until on or about late April 2026. From the first subscription in August 2023 into 2026, Fleischmann received a continuous stream of optimistic communications from Newman, Koch, and Herick describing acquisitions, awards, revenue, and impending registration and public trading, and he was not conducting any independent investigation. Fleischmann did not understand the significance of the corporate-status and trading disclosures contained in the May 2024 Littman documents when he signed them, and he continued to deal with Apogee in reliance on his longstanding relationship of trust with Koch, dating to their prior work together at Red Bull.

52. The event that first prompted investigation was Apogee's late-April 2026 request for a $500,000 capital contribution for the Kentucky transaction. On the evening of April 29, 2026, Fleischmann forwarded his complete Apogee file to counsel, and counsel began public-records diligence on the morning of April 30, 2026. That diligence first surfaced Apogee's single Form D, the absence of any current Exchange Act reporting by Apogee, and the OTC Markets "Caveat Emptor" designation. The facts constituting the violations—including that the Section 11 security structure had never been created, that Apogee's representations concerning its

reporting status and progress toward Commission filings were not substantiated by its actual filing history, and the intent underlying Apogee's representations—emerged only through the investigation that followed.

53. The security structure, the corporate records, the capitalization, and the truth of Apogee's representations were peculiarly within Defendants' knowledge and control. Because Defendants affirmatively and repeatedly represented that audited financial statements and SEC filings were impending, Fleischmann had no reason to investigate earlier and could not, through reasonable diligence, have discovered the facts constituting the violations before that time.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

**(By Fleischmann Against Apogee, Newman, and Herick)**

54. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

55. This claim concerns purchases and sales of securities, namely: (a) the August 2023 purchase of Series B Preferred; (b) the October 2023 purchase of Series B Preferred; (c) the January 2024 purchase of Series B Preferred; and (d) the May 15, 2024 purchase of Series B Preferred. The April 2025 and June 2025 stock-for-services issuances are addressed under the Fifth Claim for Relief; the Commercial Financing Agreement and the trade obligations are not securities and are not a basis for this claim.

56. In connection with all four purchases, Apogee made an untrue statement of material fact, that the Series B Preferred was "Secured," and omitted the material fact that the Section 11 pledge, mortgage, and trustee structure had not been and would not be created. In connection with the October 2023, January 2024, and May 15, 2024 purchases, Herick personally created and transmitted the subscription documents containing and incorporating that representation. These were a statement and an

omission of then-existing fact, independent of any financial-statement or reporting representation. As to the May 15, 2024 purchase, Newman's March 1, 2024 representations—that Apogee's financials were "currently being prepared for audit and will soon be uploaded to the OTC Markets" and that its stock was anticipated "to commence trading by late March"—conveyed progress toward audited reporting and imminent public trading; on information and belief no audited financial statements or SEC reporting followed and no such trading commenced, and Fleischmann relied on those representations.

57. Newman's March 1, 2024 statements, Herick's March 21, 2024 statements, and the August 29, 2024 statement that Apogee's financials were "now complete and will be filed shortly with the SEC" were untrue statements of material fact or were rendered misleading by the omission of Apogee's actual filing status. The August 29, 2024 representation that the financials were "now complete" and would be "filed shortly with the SEC" concerned then-existing facts and imminent filing status and was false or materially misleading: on information and belief Apogee did not engage an auditor until January 2026 and no audited financial statements or Commission filing ever followed. These statements are further pleaded as evidence of Defendants' knowledge and intent and as continuing acts of concealment.

58. Each individual Defendant made the statements attributed to him: Newman authored the March 1, 2024 investor letter, accepted or countersigned all four Series B subscriptions, and signed the "Secured Stock" Certificate of Designation on each subscription; Herick created and transmitted the October 2023, January 2024, and May 2024 subscriptions and authored the March 21, 2024 solicitation and the August 29, 2024 update. Apogee, as issuer, made or is responsible for the "Secured Stock" representation, the offering materials, and the investor communications.

59. Defendants acted with scienter. Newman, as Chief Executive Officer, signed the "Secured Stock" Certificate of Designation on each subscription and therefore knew or recklessly disregarded that the Section 11 pledge, mortgage, and

trustee structure had not been created, yet caused the Series B to be sold as "Secured" and represented in his March 1, 2024 letter that Apogee's financials were being prepared for audit and its stock would soon trade. Herick, who signed subscription documents as Apogee's "Chief Financial Officer," created and transmitted the subscriptions, and circulated the August 29, 2024 update, knew or recklessly disregarded that the Series B was not in fact secured by the structure Section 11 required and that the representation that the financials were "now complete" and would be "filed shortly with the SEC" was false or materially misleading: on information and belief, Apogee did not engage an auditor until January 2026, and no audited financial statements or Commission filing ever followed. The pledge, mortgage, trustee, corporate, and SEC-filing facts were peculiarly within these Defendants' knowledge and control. These particularized facts give rise to a strong inference of scienter as to each. Plaintiffs further allege, on information and belief, that the $31,269,920 barrel-inventory figure Herick stated on March 21, 2024 was materially overstated; the facts supporting that belief remain under investigation, and Plaintiffs rely on that figure as part of the course of conduct rather than as an independent basis of falsity pending that investigation.

60. Fleischmann actually and justifiably relied on the misrepresentations, and on the completeness of the offering materials, in effecting the securities transactions identified above; and, to the extent applicable, his reliance on the material omissions that Apogee and its officers and director were under a duty to disclose is independently presumed under governing law. As a direct and proximate result, Fleischmann suffered economic loss.

61. The loss was caused by the deception and not merely by disclosed business risk. The concealed absence of the Section 11 collateral structure materialized in loss when Apogee became unable to meet its obligations: the stock that had been sold to Fleischmann as "Secured" left him, in fact, an unsecured holder with no collateral recourse, precisely the risk the concealment hid. The true value of what

Fleischmann purchased—preferred stock sold as "Secured" but without the promised pledge, mortgage, and trustee—was materially less at the time of each purchase than the represented value of secured preferred stock, and Apogee's insolvency and default revealed and materialized that concealed difference. Separately, the concealed truth about Apogee's reporting status—and the failure of the represented registration and trading to occur—materialized in loss by leaving Fleischmann holding restricted securities without the represented pathway to reporting and liquidity, rendering them of far less value than represented and, on information and belief, effectively unsaleable; Fleischmann has never received stock certificates for any of his shares and has no present access to them. These are direct, face-to-face transactions, and Fleischmann's measure of loss is his out-of-pocket loss, to be established at trial. As alleged above, the facts constituting the violation, including facts supporting a strong inference of scienter, were not discovered and could not reasonably have been discovered before late April 2026, and this claim is timely under 28 U.S.C. § 1658(b).

## SECOND CLAIM FOR RELIEF

## CONTROL-PERSON LIABILITY UNDER SECTION 20(a) OF THE EXCHANGE ACT

**(By Fleischmann Against Newman, Koch, and Herick)**

62. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

63. Apogee is primarily liable for the violations of Section 10(b) and Rule 10b-5 alleged in the First Claim for Relief. Newman, Koch, and Herick were, at all relevant times, controlling persons of Apogee within the meaning of § 20(a), 15 U.S.C. § 78t(a), by virtue of their offices, their managerial authority, and their actual power over and participation in the transactions and communications at issue.

64. Newman, Koch, and Herick are jointly and severally liable with Apogee for its violations, subject to the statutory good-faith defense. Each had actual power and control over Apogee's policies, its securities documents, its investor

communications, its financing, and the transactions at issue. This claim is timely for the reasons stated in the First Claim for Relief.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA CORPORATIONS CODE §§ 25401 AND 25501**

**(By Fleischmann Against Apogee)**

65. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

66. California Corporations Code § 25401 makes it unlawful to offer or sell, or to buy or offer to buy, a security in this State by means of a written or oral communication that includes an untrue statement of a material fact or omits a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading. Apogee is the person that offered and sold the Series B Preferred securities that are the subject of this claim to Fleischmann. Apogee sold those securities by means of the untrue statements and material omissions identified above, including the misrepresentation that the securities were secured by the Section 11 structure and the misrepresentation and concealment of Apogee's reporting status and progress toward audited financial reporting, Commission filings, and public trading.

67. Under California Corporations Code § 25501, Fleischmann, as the purchaser from Apogee, is entitled to recover the consideration he paid for the securities, together with interest at the legal rate, upon tender of the securities, or damages if he no longer owns them. Fleischmann tenders the securities to the extent required and seeks rescissory recovery. The facts constituting the violation were not discovered and could not reasonably have been discovered before late April 2026, and this claim is timely under California Corporations Code § 25506.

//

//

**FOURTH CLAIM FOR RELIEF**

**LIABILITY UNDER CALIFORNIA CORPORATIONS CODE § 25504**

**(By Fleischmann Against Newman, Koch, and Herick)**

68. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

69. California Corporations Code § 25504 imposes joint and several liability, with the person primarily liable under California Corporations Code § 25501, upon every person who directly or indirectly controls that person, upon its principal executive officers or directors, and upon every person who materially aids in the act or transaction constituting the violation. Newman is a principal executive officer of Apogee; Herick is an officer of Apogee who signed its subscription documents as "Chief Financial Officer"; and Newman, Koch, and Herick each controlled Apogee or materially aided in the acts constituting the violation alleged in the Third Claim for Relief.

70. Each of Newman, Koch, and Herick is therefore jointly and severally liable with Apogee for the liability established under the Third Claim for Relief, subject only to the statutory defense that the person had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which liability is alleged. Plaintiffs allege that none of them can establish that defense. This claim is timely for the reasons, inter alia, stated in the Third Claim for Relief.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA CORPORATIONS CODE §§ 25110 AND 25503**

**(By Fleischmann Against Apogee—April 2025 and June 2025 Issuances Only)**

71. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

72. This claim is limited to the April 2025 and June 2025 issuances of common stock to Fleischmann, each of which was a sale of a security in the State of

California for consideration. Those securities were not qualified under California Corporations Code § 25110. Under California Corporations Code § 25503, Fleischmann is entitled to rescission and to recover the consideration paid, with interest, or damages, on account of those unqualified sales. Any claim of exemption is a matter to be pleaded and proved by the party asserting it.

73. Each 2025 issuance occurred within two years before the filing of this Complaint, and this claim is timely under Corporations Code § 25507. This claim is limited to the 2025 issuances and does not seek relief under California Corporations Code §§ 25110 or 25503 as to the 2023 or January 2024 cash purchases.

**SIXTH CLAIM FOR RELIEF**

**FRAUD, DECEIT, AND CONCEALMENT**

**(By Fleischmann Against Apogee, Newman, Herick, and Koch)**

74. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

75. Apogee, Newman, and Herick made the material misrepresentations identified above, and Apogee, Newman, and Herick concealed and suppressed the material facts identified above—including that the Section 11 security structure had not been and would not be created and that Apogee's representations concerning its reporting status, progress toward audited financial reporting, and impending Commission filings were false—with knowledge of their falsity and with intent to induce Fleischmann to purchase securities and to extend credit and services. Koch participated in that course of conduct as alleged in the following sentence. Koch was present during the oral solicitations of Fleischmann's investments and, with knowledge that the trade debt was unpaid, proposed in February 2024 to convert that debt into Apogee stock; he signed as the accepting officer on both 2025 stock-for-services subscriptions; he executed and administered the Commercial Financing Agreement; on April 30, 2026 he made the in-person representations at Fleischmann's Cerritos facility, described above, concerning the escrow period, the funding timeline,

and repayment of Fleischmann's loans; and on June 3, 2026 he declined to confirm Fleischmann's characterization of the $250,000 advance and thereafter did not respond. Through these acts Koch participated in the course of conduct and concealment alleged above.

76. Fleischmann was unaware of the concealed facts and would not have acted as he did had he known them. He justifiably relied on the misrepresentations and on the reasonable expectation that Defendants had disclosed the material facts within their exclusive knowledge. As a direct and proximate result, Fleischmann has been damaged in an amount to be proven at trial.

77. The conduct of Apogee, Newman, Herick, and Koch was willful, oppressive, and fraudulent within the meaning of California Civil Code § 3294, entitling Fleischmann to punitive and exemplary damages. The facts constituting the fraud were not discovered and could not reasonably have been discovered before late April 2026, and this claim is timely.

**SEVENTH CLAIM FOR RELIEF**

**NEGLIGENT MISREPRESENTATION**

**(By Fleischmann Against Apogee, Newman, and Herick)**

78. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

79. In the alternative to the Sixth Claim for Relief, Apogee, Newman, and Herick made the representations identified above without reasonable ground for believing them to be true, intending that Fleischmann rely on them. Fleischmann justifiably relied on the representations to his detriment and was thereby damaged in an amount to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT—SERIES B SECURITY OBLIGATION**

**(By Fleischmann Against Apogee)**

80. Plaintiffs incorporate by reference each preceding allegation as though

fully set forth herein.

81. The Certificate of Designation and the subscription agreements governing the Series B Preferred are contracts between Fleischmann and Apogee. Section 11 of the Certificate of Designation provides that Apogee "shall execute a Pledge and Security Agreement and Mortgage to a Trustee, for the benefit of the Series B Preferred Shareholders to secure the Series B Preferred Stock," and thereby imposed on Apogee an express, affirmative obligation to execute those instruments. Fleischmann performed all conditions required of him, including payment of the purchase price.

82. Apogee breached that obligation. Apogee has never executed the Pledge and Security Agreement, the mortgage, or the trustee appointment, and has never created any security for the benefit of the Series B Preferred holders, delivering to Fleischmann a security materially different from the secured security it was contractually obligated to provide. Apogee's obligation to execute the security instruments is unperformed and continuing, and Apogee's non-performance was not disclosed to Fleischmann.

83. As a direct and proximate result of Apogee's breach, Fleischmann has been damaged in an amount to be proven at trial, including the difference in value between the secured security he was promised and the unsecured security he received.

## **NINTH CLAIM FOR RELIEF**

## **BREACH OF CONTRACT—COMMERCIAL FINANCING AGREEMENT**

**(By Fleischmann Against Apogee)**

84. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

85. The CFA is a valid and enforceable contract governed by California law. Fleischmann performed all conditions required of him and funded the facility. Apogee breached the CFA by failing to repay the amounts due under the facility. The facility balance exclusive of the disputed advance is separately ascertainable and will be

proven at trial. In addition, and in the alternative, the $250,000 that Fleischmann advanced on May 4, 2026 is, on Plaintiffs' primary theory, an advance within and secured by the CFA; if it is determined not to fall within the CFA, it is recoverable as a reimbursement or restitution obligation as alleged in the Tenth and Fourteenth Claims for Relief, and if induced by misrepresentation it forms part of the damages alleged in the Sixth Claim for Relief. On information and belief, the aggregate balance treated as owing under the CFA, including the May 4, 2026 advance, was $998,075.47 as of July 8, 2026, with continuing interest at the contract rate.

86. As a direct and proximate result of Apogee's breach, Fleischmann has been damaged in the amount of the unpaid principal, accrued interest, and other amounts owing under the CFA, in a sum to be proven at trial, together with Fleischmann's rights as a secured party under the CFA and Division 9 of the California Uniform Commercial Code.

**TENTH CLAIM FOR RELIEF**

**DECLARATORY RELIEF**

**(By Fleischmann Against Apogee)**

87. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

88. An actual controversy has arisen between Fleischmann and Apogee concerning the characterization of the $250,000 that Fleischmann wired to the Synovus escrow on May 4, 2026. Fleischmann contends that the advance is a senior secured advance repayable under the CFA or, in the alternative, a reimbursement obligation repayable by Apogee. On information and belief, Apogee disputes or has declined to confirm that characterization.

89. Fleischmann seeks a judicial declaration that the $250,000 advance is repayable by Apogee, whether as a secured advance under the CFA or as a reimbursement or restitution obligation, together with such further relief as is necessary to enforce that determination.

**ELEVENTH CLAIM FOR RELIEF**

**COMMON COUNTS—OPEN BOOK ACCOUNT, ACCOUNT STATED, AND REASONABLE VALUE OF SERVICES**

**(By W2 Logistics LLC Against Apogee)**

90. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

91. Within the last four years, Apogee became indebted to W2 Logistics on an open book account for services rendered, and for the reasonable value of warehousing, storage, freight, and handling services rendered by W2 Logistics to Apogee at Apogee's request, in the amount of $46,235.48. In the alternative, an account was stated between W2 Logistics and Apogee in that amount. No part of that sum has been paid, although demand has been made, and the whole thereof is due, owing, and unpaid, together with interest.

**TWELFTH CLAIM FOR RELIEF**

**COMMON COUNTS—OPEN BOOK ACCOUNT, ACCOUNT STATED, AND REASONABLE VALUE OF SERVICES**

**(By CA Productions LLC Against Apogee)**

92. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

93. Within the last four years, Apogee became indebted to CA Productions on an open book account for services rendered, and for the reasonable value of storage, contract manufacturing, freight handling, and related services rendered by CA Productions to Apogee at Apogee's request, in the amount of $50,486.39. In the alternative, an account was stated between CA Productions and Apogee in that amount. No part of that sum has been paid, although demand has been made, and the whole thereof is due, owing, and unpaid, together with interest.

//

//

**<u>THIRTEENTH CLAIM FOR RELIEF</u>**

**<u>AVOIDANCE OF VOIDABLE TRANSFER (CAL. CIV. CODE §§ 3439.04, 3439.05, 3439.07)</u>**

**(By Plaintiffs Against Apogee and Damgoode)**

94. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

95. Plaintiffs are creditors of Apogee, and their claims arose before or within a reasonable time after the transfers and obligations alleged herein. On information and belief, in connection with the Luca Mariano acquisition Apogee made one or more transfers to or for the benefit of Damgoode, its nominee and transferee, and/or incurred obligations, comprising value, funds, and the benefit of the acquisition opportunity that Apogee's consideration and activity procured—including the benefit of Fleischmann's $250,000 escrow advance—including by structuring the acquisition so that title to the resulting assets would be taken, or was to be taken upon closing, in Damgoode's name rather than in Apogee's.

96. Apogee did not receive a reasonably equivalent value in exchange for the transfer or obligation, and at the time Apogee was engaged or about to engage in a transaction for which its remaining assets were unreasonably small, was insolvent, or became insolvent as a result, rendering the transfer or obligation voidable under California Civil Code §§ 3439.05 and 3439.04(a)(2). In the alternative, Apogee made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud its creditors, including Plaintiffs, within the meaning of California Civil Code § 3439.04(a)(1), as evidenced by, among other badges of fraud presently known: Apogee's use of a newly formed, related nominee entity to take title to the acquisition; Apogee's retention of control over or benefit from the assets; the existence at the time of substantial matured and unpaid obligations to Plaintiffs and other creditors; Apogee's pattern of delayed and unmade payments, including its July 2026 statement that it was "waiting on the final payments from RNDC" before paying Plaintiffs; the

timing of the transaction in relation to Plaintiffs' demands and Apogee's defaults; the direction of a significant new asset or opportunity away from Apogee; and the concealment of the transaction from Plaintiffs.

97. Plaintiffs are entitled to the remedies provided by California Civil Code § 3439.07, including avoidance of the transfer to the extent necessary to satisfy their claims, attachment, an injunction against further disposition, and the appointment of a receiver. Because the specific transfers, consideration, and closing terms are within Defendants' knowledge and control, Plaintiffs plead this claim on information and belief and will seek leave to amend to allege the particulars upon obtaining the confirmation, sale, and closing records from the Michigan bankruptcy proceeding and discovery.

**<u>FOURTEENTH CLAIM FOR RELIEF</u>**

**<u>QUASI-CONTRACTUAL UNJUST ENRICHMENT AND RESTITUTION</u>**

**(By Plaintiffs Against Apogee, in the Alternative)**

98. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

99. In the alternative to the contract claims, Apogee has received and retained money, services, and benefits from Plaintiffs—including the consideration paid for the securities, the funds advanced under and in connection with the CFA, and the value of the warehousing, manufacturing, and logistics services rendered—under circumstances in which it would be unjust for Apogee to retain them without payment. Plaintiffs are entitled to restitution of the benefits Apogee obtained at Plaintiffs' expense, in a sum to be proven at trial.

**<u>FIFTEENTH CLAIM FOR RELIEF</u>**

**<u>LIABILITY UNDER CALIFORNIA CORPORATIONS CODE § 25504.1</u>**

**(By Fleischmann Against Newman and Herick, in the Alternative)**

100. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

101. California Corporations Code § 25504.1 imposes joint and several liability, together with the person who violates Section 25401 or Section 25110, upon any person who materially assists in that violation with intent to deceive or defraud. Newman and Herick each materially assisted in the violation of California Corporations Code § 25401 alleged in the Third Claim for Relief—Newman by authoring and disseminating the investor communications and accepting the subscriptions, and Herick by preparing and transmitting the subscription documents and soliciting investment—and each did so with intent to deceive or defraud, as alleged above. To the extent Newman or Herick likewise materially assisted the April 2025 and June 2025 issuances alleged in the Fifth Claim for Relief with intent to deceive or defraud, each is liable under this section as to those issuances as well.

102. Each of Newman and Herick is therefore jointly and severally liable under California Corporations Code § 25504.1 for the liability established under the Third Claim for Relief, and under the Fifth Claim for Relief to the extent his material assistance in the 2025 issuances is established. This claim is pleaded in the alternative to the Fourth Claim for Relief and is timely for the reasons, inter alia, stated in the Third and Fifth Claims for Relief.

## SIXTEENTH CLAIM FOR RELIEF

## BREACH OF CONTRACT—WAREHOUSING AND RELATED SERVICES

**(By W2 Logistics LLC and CA Productions LLC Against Apogee, in the Alternative)**

103. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

104. In the alternative to the common counts, each of W2 Logistics and CA Productions entered into an agreement with Apogee, implied in fact from the parties' course of dealing and performance, under which it provided warehousing, storage, freight, handling, or contract-manufacturing services to Apogee at Apogee's request, at an agreed or reasonable rate of approximately $28 per pallet per month, and Apogee

agreed to pay for those services. Each of W2 Logistics and CA Productions performed its obligations.

105. Apogee breached those agreements by failing to pay for the services rendered. As a direct and proximate result, W2 Logistics has been damaged in the amount of $46,235.48 and CA Productions has been damaged in the amount of $50,486.39, together with interest and any further amounts recoverable under the parties' agreements.

**SEVENTEENTH CLAIM FOR RELIEF**

**ACCOUNTING**

**(By Fleischmann Against Apogee)**

106. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

107. The financial relationship between Fleischmann and Apogee—including the revolving Commercial Financing Agreement with interest compounding monthly, the application of payments and advances under it, the disputed $250,000 advance, Apogee's handling and disposition of collateral, inventory, and their proceeds, and Apogee's issuance and recording of the securities sold to Fleischmann—involves accounts and dealings so complex that the balance owing to Fleischmann cannot be ascertained without an accounting. A balance is due from Apogee to Fleischmann that can be ascertained only by an accounting.

108. Fleischmann is entitled to an accounting of the sums advanced and repaid under and in connection with the CFA, the application of any collateral and its proceeds, and the securities issued and recorded in his name, and to judgment for the amount found due.

**EIGHTEENTH CLAIM FOR RELIEF**

**ENFORCEMENT AND DECLARATION OF WAREHOUSE LIENS (CAL. COM. CODE § 7209)**

**(By W2 Logistics LLC and CA Productions LLC Against Apogee)**

109. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

110. W2 Logistics and CA Productions are warehouses that received and stored Apogee's goods for hire and that remain in possession of those goods. Under California Commercial Code § 7209, each holds a warehouse lien against the Apogee goods in its possession for the unpaid charges for storage, transportation, handling, and related services, and for expenses necessary to preserve the goods.

111. An actual controversy exists between Plaintiffs and Apogee concerning the validity, amount, and enforceability of those liens. W2 Logistics and CA Productions seek a judicial declaration, as against Apogee, that each holds a valid and enforceable warehouse lien in the amount due to it, and enforcement of those liens against the goods in accordance with California Commercial Code § 7210. Plaintiffs do not by this claim seek to adjudicate priority as against any competing lienholder not a party to this action, and reserve that relief until any such party is joined.

**NINETEENTH CLAIM FOR RELIEF**

**DECLARATORY RELIEF—SECURED-PARTY STATUS UNDER THE COMMERCIAL FINANCING AGREEMENT**

**(By Fleischmann Against Apogee)**

112. Plaintiffs incorporate by reference each preceding allegation as though fully set forth herein.

113. Section 7 of the CFA grants Fleischmann a security interest in Apogee's spirits produced, inventory, and accounts receivable. An actual controversy exists between Fleischmann and Apogee concerning the attachment and enforceability of that security interest as against Apogee, including as to Apogee's inventory and receivables and the Apogee goods presently in Plaintiffs' possession.

114. Fleischmann seeks a judicial declaration, as against Apogee, that his security interest under Section 7 of the CFA attached and is enforceable, together with such orders as are necessary to preserve and enforce his rights as a secured party under

Division 9 of the California Uniform Commercial Code. Fleischmann does not by this claim seek to adjudicate priority as against any competing secured party not a party to this action, and reserves that relief until any such party is joined.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as hereinabove set forth and as follows:

1. On the First and Second Claims for Relief, for Fleischmann's out-of-pocket and compensatory damages according to proof, jointly and severally against the Defendants named therein;

2. On the Third and Fourth Claims for Relief, for rescission and recovery of the consideration Fleischmann paid for the securities, with interest, upon tender, against Apogee and, jointly and severally, against the controlling persons named in the Fourth Claim;

3. On the Fifth Claim for Relief, for rescission and recovery of the consideration for the April 2025 and June 2025 issuances, with interest, or damages, under Corporations Code section 25503;

4. On the Sixth Claim for Relief, for compensatory damages according to proof and for punitive and exemplary damages under California Civil Code § 3294;

5. On the Seventh Claim for Relief, for compensatory damages according to proof;

6. On the Eighth Claim for Relief, for contract damages according to proof, including the difference in value between the secured and unsecured security;

7. On the Ninth Claim for Relief, for the unpaid principal, accrued contract interest, and other amounts owing under the CFA according to proof, and for recognition of Fleischmann's rights as a secured party;

8. On the Tenth Claim for Relief, for a declaration that the $250,000 advance of May 4, 2026 is repayable by Apogee as a secured advance under the CFA or as a reimbursement or restitution obligation;

9. On the Eleventh Claim for Relief, for $46,235.48, with interest, in favor of W2 Logistics LLC;

10. On the Twelfth Claim for Relief, for $50,486.39, with interest, in favor of CA Productions LLC;

11. On the Thirteenth Claim for Relief, for avoidance of the voidable transfer to the extent necessary to satisfy Plaintiffs' claims, and for attachment, injunctive relief, and the appointment of a receiver under California Civil Code § 3439.07;

12. On the Fourteenth Claim for Relief, for restitution of the benefits obtained at Plaintiffs' expense according to proof;

13. On the Fifteenth Claim for Relief, for the joint and several liability of Newman and Herick under California Corporations Code § 25504.1;

14. On the Sixteenth Claim for Relief, for contract damages of $46,235.48 to W2 Logistics LLC and $50,486.39 to CA Productions LLC, with interest;

15. On the Seventeenth Claim for Relief, for an accounting and for judgment in the amount found due;

16. On the Eighteenth Claim for Relief, for a declaration, as against Apogee, of the validity, amount, and enforceability of the warehouse liens of W2 Logistics LLC and CA Productions LLC and for their enforcement under California Commercial Code section 7210;

17. On the Nineteenth Claim for Relief, for a declaration, as against Apogee, that Fleischmann's security interest under Section 7 of the CFA attached and is enforceable;

18. For the imposition of a constructive trust and equitable lien upon the assets and proceeds traceable to the transfers and funds alleged herein, including assets held by Damgoode;

19. On all claims, for prejudgment and post-judgment interest at the maximum legal rate, for reasonable attorneys' fees and costs of suit as permitted by contract or law, and for such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 17, 2026

Respectfully submitted,

**ELDER FIRM, APC**

By: /s/ Jonathan Lee Borsuk
Jonathan Lee Borsuk, *Of Counsel*
California State Bar No. 343202
ELDER FIRM, APC
21550 Oxnard Street, Suite 780
Woodland Hills, California 91367
Telephone: (818) 344-9001
jborsuk@elderfirm.com
Attorneys for Plaintiffs Arthur R. Fleischmann, W2 Logistics LLC, and CA Productions LLC